IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | Case No. 20-cr-00008-GLR-1 |
| **v.** | * | |
| | * | |
| | * | |
| **TREVERRICK ROBINSON** | * | |
| | * | |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on the defendant's Motion to Reopen Detention Hearing and for Pretrial Release (ECF No. 24) (the "Motion"), the government's Opposition to Motion to Reopen Detention Hearing (ECF No. 25) (the "Opposition"), and the defendant's Reply in Support of Motion to Reopen Detention Hearing (ECF No. 26) (the "Reply"). The issues have been fully briefed, and no hearing is necessary. L.R. 105.6. For the reasons stated below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

I.  PROCEDURAL HISTORY

On January 9, 2020, a federal grand jury returned an indictment charging the defendant with Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), and two counts of Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g). Five days later, on January 14, 2020, the defendant appeared before United States Magistrate Judge J. Mark Coulson for his initial appearance. Judge Coulson ordered that the defendant be detained temporarily pending a detention hearing. On January 16, 2020, the defendant appeared before this Court for a detention hearing.

## II. DETENTION HEARING

At the detention hearing, the government argued that the defendant should be detained pending trial on the grounds of risk of flight and danger to the community. The government pointed out that a presumption of detention applied in this case under 18 U.S.C. § 3142(e)(3)(A). It proffered the following facts in support of its argument. The defendant was arrested in connection with an ATF investigation for drug trafficking and firearms offenses in the Pigtown area of Baltimore. Pigtown is an area of Baltimore plagued by drug trafficking, shootings, and homicides. The investigation involved the use of undercover officers and confidential informants. Controlled purchases of guns and drugs were executed. In May 2019, the defendant sold a quantity of cocaine base to a confidential informant. Then, on two occasions in October 2019, the defendant sold semi-automatic assault rifles to undercover officers. Although the defendant was only indicted on these three incidents, the government averred that the defendant was involved in other illegal transactions. The government argued that the weight of the evidence against the defendant was strong, as the controlled purchases were captured on audio and/or video recordings. The government pointed out that the defendant was prohibited from possessing a firearm as a result of his 2018 conviction for possession of a handgun. Finally, the government argued that the defendant's mother would not be a suitable third-party custodian because she worked during daytime hours and would not be present to supervise the defendant. The government thus argued for detention based on danger to the community and risk of flight, noting several failures to appear on the defendant's record.

The defendant maintained that conditions of release could be fashioned that would both assure his appearance at future proceedings and the safety of the community. He first reminded the Court that he is entitled to a presumption of innocence. *See* 18 U.S.C. § 3142(j). He then

emphasized that the quantity of cocaine allegedly sold to the confidential informant was small. Regarding the weapons offenses, the defendant noted that, although he was charged with selling the weapons, he was not charged with possessing, using, or brandishing them. He asserted that the weapons at issue are legally sold in sporting goods stores. Although he did not claim he had been entrapped by the agents, he stressed that this was simply a case where the agents promised a 21-year-old young man cash for guns. The defendant highlighted his strong ties to the area. His girlfriend was pregnant with his child. Family members were present in the courtroom to support him. He has worked over the years. He suffered from mental health and substance abuse issues. He also emphasized that his criminal history was minimal. The defendant requested that he be released to the third-party custody of his mother. His mother lives far from the Pigtown area and, significantly, far from the defendant's prior acquaintances. The defendant recommended that he be placed on home detention at the residence of his mother and that one of the conditions of release be mental health counseling.

After hearing from the parities, the Court reviewed the factors set forth in 18 U.S.C. § 3142(g). The Court noted that this case involved firearms and a controlled substance. The Court also found that the evidence against the defendant was strong. The Court acknowledged that the defendant has strong ties to the community and strong family support. He was a lifelong resident of the area. His girlfriend was pregnant with his child. Significantly, the Court observed that, at the time of at least the alleged drug offense in May 2019, the defendant was on supervised release for the 2018 handgun conviction and unsupervised probation before judgment for a 2018 controlled substance offense. Ultimately the Court concluded that the defendant did not sufficiently rebut the presumption of detention and found by clear and convincing evidence that there was no condition or combination of conditions of release that would reasonably assure

community safety. The Court, therefore, ordered that the defendant be detained pending further proceedings. *See* Order of Detention (ECF. 13).

III. ANALYSIS

Under 18 U.S.C. § 3142(f), a detention hearing

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

The defendant argues that new and material information exists that was not known to him at the time of the detention hearing and that this new and material information justifies his release from the D.C. Jail where he is detained. In the first instance, the Court must determine if the new information claimed by the defendant has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance as required and community safety. If it is, then the Court will consider it in its analysis of the factors set forth in 18 U.S.C. § 3142(g).

The defendant first argues that his detention at the D.C. Jail increases his risk of exposure to COVID-19. He does not allege that he has tested positive for the virus or has exhibited symptoms consistent with infection. He does not allege that he has been exposed to anyone who has tested positive for the virus. He does not allege that he is at particular risk of being infected or suffering complications if infected because of advanced age or a health condition, such as asthma or diabetes. Rather, he argues that he is at a high risk of contracting COVID-19 due to the fact of his incarceration at the D.C. Jail and the failure of the D.C. Jail to implement adequately measures to stop the spread of the virus. *See* Motion (ECF No. 24 at 1). At the time of the detention hearing on January 16, 2020, the fact that COVID-19 would become the

aggressive and pervasive virus it is today was unknown. Its existence was not even raised at the detention hearing. The Court thus finds that this information was not known to the defendant at the time of the detention hearing and has a material bearing on the issue of whether conditions of release are appropriate. *See* 18 U.S.C. § 3142(g)(3) (stating that one of the factors to be considered in the determination of release conditions is the physical condition of the defendant).

The defendant also now advises that his mother, whom he offers as a suitable third-party custodian, is now teleworking from home and would always be physically present to supervise him if he was released to her custody. At the time of the detention hearing, the defendant's mother worked during daytime hours and would not be present during the day to supervise him. The Court also finds that this is a new and material fact to be considered in the release determination.

The Court now determines if this new and material information when considered with the information considered at the detention hearing requires the Court to rescind its original order of detention and release the defendant on conditions of release.

As mentioned earlier, the defendant contends that his detention at the D.C. Jail enhances his risk of contracting COVID-19. He asserts that the conditions at the D.C. Jail are unsafe, that the D.C. Jail is not adequately implementing measures to stop the spread of the virus and that it is not equipped to offer the defendant necessary treatment should he become infected. The defendant directs the Court's attention to recent cases from this Court and the United States District Court for the District of Columbia ordering the release of defendants detained in facilities in the District of Columbia because of health concerns created by the COVID-19 pandemic. *See* Motion (ECF No. 24 at 5-7).

In response, the government contends that the defendant's argument runs counter to the individualized determination required by the Bail Reform Act, and that the defendant has failed to make a sufficient factual showing for the relief sought. The government cites numerous recent cases from this Court and the District Court for the District of Columbia that have denied similar claims by detainees in District of Columbia facilities. *See* Opposition (ECF No. 25 at 1-2). The government then summarizes the comprehensive precautionary measures that have been implemented by the D.C. Jail to protect detainees from exposure to COVID-19. *See* Opposition (ECF No. 25 at 7-9). Thus, the government argues that the new information concerning COVID-19 does not support the defendant's release.

COVID-19 is a worldwide pandemic that has had a profound impact on the health and daily life of millions of people. In the recent case of *Coreas v. Bounds*, Civil Action No. TDC-20-0780, 2020 WL 1663133 (D. Md. Apr. 3, 2020), United States District Judge Theodore D. Chuang summarized the nature of the virus, the risks of exposure to it, and the steps employed by local governments and communities to curtail its spread:

> The virus identified as SARS-CoV-2, commonly referred to as the novel coronavirus ("the Coronavirus"), has caused a global pandemic of the condition known as COVID-19. As of April 3, 2020, there were 932,166 confirmed cases and 46,764 deaths worldwide. *Coronavirus Disease (COVID-19) Pandemic*, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019. As of April 2, 2020, there were 213,144 confirmed cases and 4,513 deaths in the United States. *Cases in U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html. The Centers for Disease Control and Prevention ("CDC") has projected that, without effective public health intervention, about 200 million people in the United States may contract the disease, and, under some projections, as many as 1.5 million people in the United States may die from the disease. Another organization's projection puts the potential number of American fatalities at 2.2 million. Moreover, some evidence suggests that, even when not fatal, COVID-19 results in long-term, serious illnesses, which may include severe damage to internal organs, in about 16 percent of cases.

> COVID-19 poses special risks for the elderly and those with certain preexisting medical conditions. *Amici Curiae* Public Health and Human Rights Experts Br. at 6-7, ECF No. 32. The CDC has identified several medical conditions that place an individual at an increased risk of serious COVID-19 complications: "blood disorders, chronic kidney or liver disease, compromised immune system, endocrine disorders, including diabetes, metabolic disorders, heart and lung disease, neurological[,] neurologic and neurodevelopmental conditions, and current or recent pregnancy." Greifinger Decl. ¶ 7, Reply Mot. TRO ("Reply") Ex. 6, ECF No. 52-6. Of those who have died from COVID-19 in Italy, another country experiencing a high number of COVID-19 cases, about three-fourths had high blood pressure, one-third had diabetes, and one-third had heart disease. According to Dr. Jonathan Louis Golob, an Assistant Professor at the University of Michigan School of Medicine, there is evidence that in the highest risk populations, COVID-19 causes death in about 15 percent of cases. Preliminary data from China has shown that 20 percent of COVID-19 cases involving high-risk categories have resulted in death.
>
> There is no vaccine, antiviral treatment, or cure for COVID-19. The Coronavirus is believed to spread through "droplets" that can be transmitted during close interpersonal contact, though these droplets can also survive on surfaces for days and spread the disease even absent such close contact. *Id.* ¶ 21. There is some evidence that individuals with the Coronavirus can transmit it to others even when they are not yet symptomatic. Public health measures aiming to stop the spread of the virus—most notably the practice of social distancing—have been widespread: "[s]chools, courts, collegiate and professional sports, theater and other congregate settings have been closed," *id.* ¶ 8, and many states have issued mandatory social distancing polices. The Governor of Maryland issued a stay-at-home order on March 30, 2020. *See* Order of the Governor of the State of Maryland § II, No. 20-03-30-01 (Mar. 30, 2020), https://governor.maryland.gov/wp-content/uploads/2020/03/Gatherings-FOURTH-AMENDED-3.30.20.pdf. As of April 2, 2020, 40 states and the District of Columbia had issued stay-at-home or shelter-in-place orders. *See These States Have Implemented Stay-at-Home Orders*, CNN (Apr. 2, 2020), https://www.cnn.com/2020/03/23/us/coronavirus-which-states-stay-at-home-order-trnd/index.html.

*Coreas*, 2020 WL 1663133, at *1-2.

Judge Chuang also reviewed the vulnerabilities of persons detained in jails and detention facilities caused by COVID-19:

> Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19. First, even if these facilities suspend in-person visitation, the staff, contractors, and vendors working at the facilities can still introduce the Coronavirus into the facility, a risk that is all the more difficult to contain because

7

> asymptomatic individuals can transmit the virus and because these facilities lack the capacity to screen for the virus in asymptomatic individuals. According to Petitioners' expert, Dr. Robert B. Greifinger, an expert on prison and jail health care and the former manager of medical care for the New York State prison system, "[j]ails and detention centers are congregate environments where the risk of infection and infectious spread are extraordinarily high." Greifinger Decl. ¶¶ 1-2, 16. Indeed, there have already been confirmed outbreaks of COVID-19 at several prisons and detention facilities across the United States, including the Rikers Island detention facility in New York City, the Cook County Jail in Chicago, Illinois, and the federal prison in Oakdale, Louisiana, as well as certain New Jersey jails housing ICE detainees. In this region, COVID-19 has been identified in the Clifton T. Perkins Hospital Center, a psychiatric hospital in Jessup, Maryland; and the D.C. Jail in Washington, D.C.
>
> Second, once the Coronavirus is introduced into a detention facility, the nature of these facilities makes the mitigation measures introduced elsewhere in the country difficult or impossible to implement. Detention facilities often lack personal protective equipment that helps prevent the transmission of the virus. Shared facilities, such as bathrooms, dining halls, and telephones, are often not disinfected between uses. Poor ventilation increases the risk of transmission. Detained individuals are often not given the opportunity or tools to wash or sanitize their hands frequently. And the crowded nature of the facilities can make social distancing recommended by the CDC impossible.

*Id.* at *2.

In the past few weeks, many pretrial detainees in this district have filed petitions for release citing the potential increased risk of COVID-19 complications due to advanced age or a specific health condition. *See, e.g.*, *United States v. Bilbrough*, Criminal Case No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (diabetes); *United States v. Gray*, Criminal Case No. GJH-19-407, 2020 WL 1554392 (D. Md. Apr. 1, 2020) (diminished immune system, heart flutters, shortness of breath); *United States v. Williams*, Criminal Case No. PWG-13-544, 2020 WL 1434130 (D. Md. filed Mar. 24, 2020) (advanced age); *United States v. Martin*, Criminal Case No. PWG-19-140-13, 2020 WL 1274857 (D. Md. Mar. 17, 2020) (diabetes, asthma, high blood pressure). Some defendants even have claimed to have contracted COVID-19. *See, e.g.*, *United States v. McCormick*, Criminal Case No. GLR-19-0318 (D. Md. filed Apr. 2, 2020);

*United States v. West*, Criminal Case No. ELH-19-0364, 2020 WL 1638840 (D. Md. Apr. 2, 2020). The defendant does not claim any of these specific risk factors. Rather, the defendant relies on the general risk of potential exposure to the virus he faces as a detainee. He argues that the measures taken by the D.C. Jail to contain the virus are inadequate and ineffective to protect him from becoming infected. *See* Motion (ECF No. 24 at 1-7). In recent weeks, the judges of this Court have received, and continue to receive, an abundance of factual and statistical information. Defendants continue to update the Court on the purported continued failure of detention facilities to protect adequately detainees from exposure to COVID-19, while the government continues to update the Court on the enhanced precautionary measures implemented by detention facilities to protect detainees. United States Magistrate Judge J. Mark Coulson recently commented:

> COVID-19 is a rapidly evolving event. The Court is faced with multiple sources of information, both direct and anecdotal, from all levels of government, health experts (public and private), litigants, and other involved and interested personnel and entities regarding conditions, protocols, recommendations, suspected infection rates, and treatments, some of which is, at least in part, conflicting. Such conflicts notwithstanding, the Court considers all credible sources, which would of course include organizations like the Union representing these correctional officers who put themselves at particular risk, even in the absence of a virus about which we are all still learning. It would also include information it receives from the U.S. Marshals Service as detailed by the Government, as well as several other sources. The Court does its best to get the most accurate picture of conditions "on the ground," often consulting with multiple sources, multiple times per day.

*United States v. Gibson-Bey*, No. RDB 19-0563, Order at 3 (D. Md. filed Mar. 31, 2020).

The Court now considers again the factors set forth in 18 U.S.C. § 3142(g) in light of the new and material information provided by the defendant. The first factor pertains to the nature and circumstances of the offense charged, including whether the offense involves "a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). The defendant is charged with two firearms offenses and one controlled substance offense.

The second factor requires the Court to determine the weight of the evidence against the defendant. *Id.* § 3142(g)(2). As mentioned earlier, the Court found at the detention hearing that the weight of the evidence is strong. The government has video and/or audio surveillance showing the defendant selling drugs to a confidential informant on one occasion and selling semi-automatic assault rifles to undercover agents on two occasions when he was prohibited from possessing a firearm.

The third factor requires the Court to consider the history and characteristics of the defendant, including his physical condition and whether at the time of the current offense he was on probation. *Id.* § 3142(g)(3). Here, the Court adopts the findings made at the conclusion of the detention hearing. The Court now also considers the defendant's risk of exposure to COVID-19. Further, as noted earlier, the defendant was on supervised probation in one case and unsupervised probation before judgement in another case at the time of the drug offense.

The fourth and final factor requires the Court to consider the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.* § 3142(g)(4). Here, the Court considers that there is now a suitable third-party custodian who will be present in the residence to supervise the defendant 24 hours a day.

The Court has considered all the 18 U.S.C. § 3142(g) factors, including the new and material information. The Court again finds that the defendant has not sufficiently rebutted the presumption of detention and again finds by clear and convincing evidence that there are no conditions or combinations of release that would reasonably assure the safety of the community.

The Court acknowledges the potential risk of exposure to COVID-19 the defendant faces while detained. On the other hand, the Court also recognizes the risks to the community if the defendant is released. The defendant, a 21-year-old man, was caught up in an ATF investigation of illegal drug and firearms activities in the Pigtown area of Baltimore, an area known for drug

trafficking, shootings, and homicides. Because of his prior conviction for possession of a handgun, he was prohibited from possessing a firearm, let alone selling semi-automatic assault rifles to undercover agents on two occasions. He also was charged with selling drugs to a confidential informant. Any person engaged in such conduct must be considered a danger to the community. Further, the offenses occurred while the defendant was on supervised probation for the prior weapons offense and unsupervised probation before judgment for a prior drug offense. This gives little comfort to the Court that he will follow the rules the Court would impose if released.

Although the Court finds that the defendant would pose a danger to the community if released, the Court must now determine if there are release conditions to mitigate that danger short of detention. The defendant recommends that the Court place the defendant on home detention at the residence of his mother and appoint his mother as third-party custodian. His mother is now teleworking from home and is available to supervise him 24 hours per day, which was not the case at the time of the detention hearing. The Court has been advised by the United States Probation Office that traditional location monitoring, requiring the probation officer to install a transmitter on a defendant's ankle, is currently suspended because of CDC guidance on social distancing. Other alternatives are available; however, none are sufficient, in the Court's opinion, to assure adequately the safety of the community.

Finally, the Court will address the defendant's Fifth and Sixth Amendment claims. *See* Motion (ECF No. 24 at 9-11). The defendant argues he should be released because restrictions imposed by the D.C. Jail on contacts and communications between counsel and the defendant as a result of COVID-19 unduly infringes upon his Sixth Amendment right to adequate representation. *See* Motion (ECF No. 24 at 9-10). The Court first notes that access to counsel is

11

not a factor to be considered under 18 U.S.C. § 3142(g).  Further, the restrictions on access to counsel identified by the defendant do not appear to be unreasonable under the circumstances.  Finally, even assuming that the restrictions on contact and communications with counsel identified by the defendant constitute an infringement of his Sixth Amendment rights, he has not cited any authority that his release is an appropriate remedy.  Regarding the defendant's Fifth Amendment due process claim, the Court finds that the precautionary measures implemented by the D.C. Jail are reasonable under the circumstances and do not arise to the level of a constitutional violation.  *See United States v. Lee*, Criminal No. ELH 19-0159, 2020 WL 1663364 (D. Md. Apr. 3, 2020); *United States v. Moran*, Criminal No. SAG-19-0585, 2020 WL 1663366 (D. Md. Apr. 3, 2020).

For the reasons above, the Court **GRANTS** the defendant's motion to reopen the detention hearing but **DENIES** his request for release.

Date: April 11, 2020 /s/
Thomas M. DiGirolamo
United States Magistrate Judge